CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 03 2014

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| IMAN BLACKWELL, | ) | |
| | ) | Civil Action No. 7:13-CV-331 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ABERCROMBIE & FITCH STORES, INC., | ) | By: Samuel G. Wilson |
| | ) | United States District Judge |
| Defendant. | ) | |

This is an action for negligence under the court's diversity jurisdiction, 28 U.S.C. § 1332, by plaintiff, Iman Blackwell, against defendant, Abercrombie & Fitch Stores, Inc. ("Abercrombie"), for injuries she sustained when an intoxicated male attacked her in an Abercrombie dressing room. As this court noted in an earlier opinion, under long-standing precedent recently reaffirmed by the Supreme Court of Virginia, a business owner ordinarily owes a duty to its invitees to warn and protect against third party criminal acts only when there is an imminent probability of harm. The court dismissed Blackwell's earlier complaint because it failed to suggest that Abercrombie's employees had reason to suspect the intoxicated visitor posed an imminent threat of harm to any of its patrons. The court noted, for instance, that there were no allegations that an Abercrombie employee saw the intoxicated visitor brandish a weapon, act physically aggressive, make intimidating or threatening remarks, or enter the dressing room area with no apparent legitimate purpose. The court, however, granted Blackwell leave to amend, and she has now filed an amended complaint showing that the suspicious, intoxicated visitor disappeared from sight when he approached the dressing room area with no apparent legitimate purpose. Once again, Abercrombie has moved to dismiss under Fed. R. Civ.

P. 12(b)(6). The court now finds that Blackwell has stated a plausible claim for relief and denies Abercrombie's motion.

I.

While a customer in Abercrombie's store, Blackwell, a young, minor female, chose some items, and one of Abercrombie's employees then escorted her to a dressing room with a broken lock. The dressing room area was, by design, poorly lit and Abercrombie was playing loud music akin to a nightclub.

While Blackwell remained in the dressing room, the same Abercrombie employee who escorted her there observed a male, later identified as Ryan Sink, who appeared intoxicated enter the store and walk toward the dressing room area. A second Abercrombie employee also noticed Sink. The employees described him as looking "kind of sketchy" and "acting very shady," and they suspected Sink may try to steal merchandise. Although trained not to turn their backs to suspicious customers who entered the store, both employees lost sight of Sink – one intentionally so – after having just seen him heading toward the dressing room area without merchandise. At that point, Sink forcibly entered Blackwell's dressing room and sexually assaulted her.

II.

The allegations in Blackwell's amended complaint lead to the fair inference that Abercrombie's employees knew of a specific and unabated threat just before the assault, making Blackwell's claim a plausible one.

The court, in its November 21, 2013 memorandum opinion, has set out the standard for a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6)[*] and the controlling Virginia law on liability

---

[*] At the Rule 12(b)(6) stage, the court must draw all reasonable inferences from the facts in favor of the plaintiff, see Kensington Volunteer Fire Dept., Inc. v. Montgomery County, Md., 684 F.3d 462, 467 (4th Cir. 2012), not try to determine what inferences the jury may ultimately draw from those facts. Indeed, requiring plausible grounds for relief "does not impose a probability requirement at the pleading stage,"

2

for the criminal acts of a third party. (Docket No. 26) Importantly, the Supreme Court of Virginia has recently reaffirmed that in the case of a business owner/invitee relationship, like here, a duty to warn of third party criminal acts arises "only where there [is] 'an imminent probability of injury' from a third party criminal act." Commonwealth v. Peterson, 286 Va. 349, 357 (2013) (citing Thompson v. Skate America, Inc., 261 Va. 121, 128-29 (2001)). "Imminent probability of harm" is "the heightened degree of foreseeability that arises where the defendant 'knows that criminal assaults against persons are occurring, or are about to occur, on the premises,' based upon 'notice of a specific danger just prior to the assault.'" Id. (internal citations omitted). Although requiring notice of a specific, imminent danger, the Supreme Court of Virginia has not required notice of exactly how the danger will manifest itself.

In undertaking this necessarily fact-specific inquiry, Peterson, 286 Va. at 356 (internal citations omitted), the court finds that Blackwell has now pled facts that satisfy the "imminent probability of injury" standard and allow the court to plausibly infer that Abercrombie's employees had notice of a specific danger – Sink – just before the assault. Beyond Sink's visible intoxication, Blackwell has pled that two Abercrombie employees saw Sink in the store; found him to be suspicious, and in their words "sketchy" and "shady"; and suspected he planned to steal merchandise. Perhaps most troublesome, the employees, with their concerns about the suspicious character unabated, last saw him as he headed toward the dimly lit dressing room area without an apparent legitimate purpose, the same dressing room area where one of them had just escorted and then left a young girl alone to undress behind a door with a broken lock. These factual circumstances and the reasonable inferences that can be drawn from them establish an imminent probability of harm that was known to Abercrombie's employees. Unlike the

---

and a well-pleaded complaint may proceed even if proof of those facts seems improbable. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007).

3

defendants in Peterson, who believed "[m]ost importantly, based on the information available at that time ... that the shooter had fled the area and posed no danger to others," id. at 359, Abercrombie's employees continued to suspect Sink was up to no good until the moment he disappeared from their sight.

III.

For the foregoing reasons, the court will deny Abercrombie's motion to dismiss.

**ENTER:** March 3, 2014.

UNITED STATES DISTRICT JUDGE